FILED

APR 17 2019

*Matthew Thel*
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## CENTRAL DIVISION

| | |
|---|---|
| SOUTH DAKOTA NEWSPAPER ASSOCIATION, | |
| SOUTH DAKOTA RETAILERS ASSOCIATION, | Civil Action No. *3:19-CV-3010* |
| SOUTH DAKOTA BROADCASTERS ASSOCIATION, | |
| SOUTH DAKOTA CHAMBER BALLOT ACTION COMMITTEE, | |
| THOMAS BARNETT, JR., | |
| and | |
| AMERICANS FOR PROSPERITY, | **COMPLAINT** |
| *Plaintiffs*, | |
| v. | |
| STEVE BARNETT, in his official capacity as South Dakota Secretary of State, | |
| and | |
| JASON RAVNSBORG, in his official capacity as South Dakota Attorney General, | |
| *Defendants*. | |

### NATURE OF ACTION

1.      Plaintiffs, the South Dakota Newspaper Association (the "Newspaper Association"); the

South Dakota Retailers Association (the "Retailers Association"); the South Dakota Broadcasters

Association (the "Broadcasters Association"); the South Dakota Chamber Ballot Action

Committee (the "Chamber Committee"); Thomas Barnett, Jr.; and Americans for Prosperity ("AFP") allege that the South Dakota ban on out-of-state contributions to South Dakota ballot question committees violates the First and Fourteenth Amendments and the Commerce Clause of the United States Constitution. *See* U.S. Const. art. I, § 8, cl. 3; U.S. Const. amends. I, XIV; S.D.C.L. § 12-27-18.2 (the "Ban").[1]

2.      Plaintiffs seek to associate with one another to express their political beliefs.

3.      However, the Ban, enacted through Initiated Measure 24 in the 2018 general election, prohibits Plaintiffs from exercising their First Amendment freedoms and discriminates against their economic activity.

4.      The Ban prohibits Barnett, AFP and others similarly situated from making financial contributions to South Dakota ballot measure committees, including the committee of plaintiff Chamber of Commerce, to help these organizations promote or oppose South Dakota ballot questions.

5.      The Newspaper Association, the Retailers Association, the Broadcasters Association, and the Chamber Committee will suffer significant civil penalties if they accept financial contributions from Barnett, AFP and others similarly situated.

6.      There is no valid state interest for the Ban under any type of applicable First Amendment scrutiny. Additionally, it is not narrowly tailored to pass constitutional muster.

7.      There is no legitimate local purpose for the Ban's discrimination against the Plaintiffs' interstate commerce activity.

---

[1] Available at: https://sdlegislature.gov/Statutes/Codified_Laws/DisplayStatute.aspx?Type=Statute&Statute=12-27-18.2.

8.      The Newspaper Association is a 501(c)(6) corporation that represents the state's 114 weekly and 11 daily newspapers. The Ban created an unprecedented concern for the Newspaper Association because of the law's restraint on free speech.  Through its First Amendment Committee, the Newspaper Association has vigorously protected and promoted First Amendment freedoms and continues to do so.  The First Amendment Committee has organized First Amendment promotional campaigns and activity engaged in the protection of free speech.  The Ban limits and prevents the Newspaper Association and its First Amendment Committee from exercising its First Amendment freedoms.  Moreover, the Ban will impose pecuniary harm on member newspapers that rely on paid political advertisements for a portion of their revenue.

9.      The Retailers Association is a broad-based organization which is affiliated with several national organizations, including corporations that are not organized under the laws of South Dakota and are located outside of the state.  The Retailers Association has a long history of promoting its political interests regarding South Dakota ballot measures.  During the 2018 election alone, the Retailers Association actively opposed three ballot measures, including Initiated Measure 24, and supported another.  These advocacy efforts involve financial contributions from partners both inside and outside of South Dakota.

10.     The Broadcasters Association is a membership organization representing 26 television stations and 118 radio stations in South Dakota.  Its member stations broadcast communications on ballot measures and their attendant campaigns as part of their local programming obligations. South Dakota ballot measure committees require financial support from all sources (both inside and outside of the state) to educate voters on the Broadcasters Association's member stations. Because the Ban prohibits a source of fundraising for ballot measure committees, Broadcast Association members will be harmed by a decrease in ballot measure communications and

insufficient content to meet their local programming obligations.  Moreover, the Ban will impose pecuniary harm on member Broadcasters that rely on paid political advertisements for a portion of their revenue.  Thus, the Ban limits and prevents Broadcast Association members from exercising their core First Amendment functions.

11.     The Chamber Committee is a South Dakota statewide ballot question committee affiliated with the South Dakota Chamber of Commerce and Industry (the "Chamber").  The Chamber was formed in the early 1900s and was officially recognized as a non-profit organized under 26 U.S.C. § 501(c)(6) in 1937.  The organization was created by business leaders across the state to address issues that might impair the ability to do business in South Dakota and likewise promote public policies that encourage investment and growth of South Dakota's economy.  Known for a long period of time as the "Greater South Dakota Association" this group merged with the South Dakota Manufacturers Association in 1986 and operated under the name Industry and Commerce Association (ICA) until 1998 when the group started to use its current name.

12.     Since its formation, the Chamber has addressed public policy by working with Governors, their cabinet members and staffs, the legislature, and regulatory agencies as well as working to pass or defeat statewide ballot measures.

13.     The Chamber has a long history of involvement in ballot measures.  It was involved in several ballot measures in the 1990s and provided leadership on a ballot measure campaign in each of the most recent eight elections:

- ❖ 2004 – IM-1 – Remove food from sales tax – Chamber Opposed
- ❖ 2006 – Amend D – Limit increase in property assessed value – Chamber Opposed
- ❖ 2008 – IM-10 – Open/Clean Gov't (aka Gag Law) – Chamber Opposed
- ❖ 2010 – Amend K - Secret ballot for union vote – Chamber Supported
- ❖ 2012 – R-14 – Referred economic development plan – Chamber support passage of plan.
- ❖ 2014 – IM-17 – Any Willing Provider – Chamber Opposed
- ❖ 2016 – IM-23 – Union Fees from Non-members – Chamber Opposed
- ❖ 2018 – Amend W – Ethics Commission – Chamber Opposed

4

14.    Not only has the Chamber been involved in leading campaigns supporting or opposing specific ballot measure campaigns but the organization formed plaintiff Chamber Committee as an ongoing ballot action committee (a.k.a. evergreen committee) to allow contributions to be used on numerous issues. *See* S.D.C.L. ch. 12-27. The Chamber Committee takes contributions from businesses interested in making sure the Chamber is ready for many different issues that may appear on the ballot.

15.    Seeking funding to conduct campaigns is a First Amendment right, and being denied access to money that enables the development of messages about a ballot measure simply because the source of that money does not reside in South Dakota is an unconstitutional limitation on campaigns.

16.    The Chamber has members that have either moved their operations to South Dakota or are expansions of businesses that are headquartered in another state. Under the restrictions of the Ban, these members would not be allowed to contribute to a campaign for four years, even if the ballot measure has a direct impact on their business.

17.    Thomas Barnett, Jr., was born and raised in South Dakota and lived there for 67 years. He recently became a Florida resident in August 2018, and registered as a Florida voter on or about August 24, 2018. As a South Dakota resident, Barnett actively participated in ballot measure campaigns, including opposition to Amendment E in 2006 and opposition to Initiated Measure 10 in 2008. However, the Ban prevents him from continuing his desired political activity in South Dakota because he is now a resident of another state. Absent the Ban, Barnett would contribute to South Dakota ballot measure committees, including the Chamber Committee.

18.    Americans for Prosperity is a Virginia based non-profit corporation, organized under 26 U.S.C. Section 501(c)(4) in the District of Columbia, that recruits, educates, and mobilizes citizens

to build a culture of mutual benefit where people succeed by helping others improve their lives. To that end, AFP advocates for policies to promote that culture, including free speech. Laws that stifle free speech and free expression, like the Ban, are particularly antithetical to the First Amendment and the rule of law because it denies citizens the right to engage in constitutionally protected political speech in South Dakota.

19.     In 2016, AFP made monetary and in-kind contributions to a ballot committee opposed to the passage of South Dakota Initiated Measure 22 and monetary contributions to a ballot committee opposed to the passage of Initiated Measure 23.  In 2018, AFP made both monetary and in-kind contributions to ballot committees that opposed Initiated Measure 24, Initiated Measure 25, and Amendment W.  In the South Dakota legislature, AFP opposed proposals like the Ban due to the proposed law's disregard for free speech. AFP intends to financially contribute to the Chamber Committee for purposes of ballot measures in South Dakota, but is prevented from doing so by the Ban. Accordingly, the Ban improperly limits AFP's ability to participate in the political process and advocate for or against the enactment of initiated measures and referred laws.

JURISDICTION

20.     This Court has jurisdiction because this action arises out of the First and Fourteenth Amendments as well as the Commerce Clause of the United States Constitution. *See* 28 U.S.C. § 1331.

21.     This Court has jurisdiction because this action arises under Section 1 of the Civil Rights Act of 1871. *See* 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1343(a).

22.     This Court has jurisdiction to grant relief under the Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201 and 2202.

## VENUE

23.     Venue is proper under 28 U.S.C. § 1391(b)(1) ("a judicial district in which any defendant

resides, if all defendants are residents of the State in which the district is located") and 28 U.S.C.

§ 1391 (b)(2) (the "judicial district in which a substantial part of the events or omissions giving

rise to the claim occurred").

## PARTIES

24.     Plaintiff South Dakota Newspaper Association is a South Dakota nonprofit corporation

organized under 26 U.S.C. § 501(c)(6).  Founded in 1882, the Newspaper Association represents

South Dakota's 114 weekly and 11 daily newspapers.

25.     Plaintiff South Dakota Retailers Association is a South Dakota nonprofit corporation

organized under 26 U.S.C. § 501(c)(6).  Founded in 1897, the Retailers Association represents

nearly 4,000 South Dakota retailers in approximately 160 different business industries.

26.     Plaintiff South Dakota Broadcasters Association is a South Dakota nonprofit corporation

organized under 26 U.S.C. § 501(c)(6).

27.     Plaintiff South Dakota Chamber Ballot Action Committee is a South Dakota statewide

ballot question committee that accepts donations, from both within and without South Dakota, to

finance its political advocacy.

28.     Thomas Barnett, Jr., is a Florida resident.  But for the Ban, he would make a financial

contribution to the Chamber Committee to continue his political advocacy in South Dakota.

29.     Plaintiff Americans for Prosperity is a Virginia based nonprofit corporation organized

under 26 U.S.C. § 501(c)(4) in the District of Columbia and has actively participated and

contributed financially to South Dakota ballot measure committees, and desires to continue to

contribute to South Dakota ballot measure committees in the future.  If not for the Ban, AFP would

immediately make a contribution to the Chamber Committee for purposes of promoting or opposing ballot question initiatives.

30.     Defendant Steve Barnett, in his official capacity as South Dakota Secretary of State, has the power to investigate and impose civil penalties for violations of the Ban. *See* S.D.C.L. § 12-27-18.2.

31.     Defendant Jason Ravnsborg, in his official capacity as South Dakota Attorney General, has the responsibility to "investigate and prosecute any violation of the provisions of" South Dakota's campaign finance chapter. S.D.C.L. § 12-27-35.   Additionally, "[i]n lieu of bringing a criminal action, the attorney general may elect to file a civil action" to enforce any of the campaign finance laws. S.D.C.L. § 12-27-35.   The Attorney General also has plenary power to inspect records of potential violators of South Dakota campaign finance law. S.D.C.L. § 12-27-3 ("The attorney general may, for the purpose of enforcing the provisions of this chapter, inspect or examine any political committee records required to be maintained by this chapter.").

FACTS

**Plaintiffs' Planned Activity**

32.     The Newspaper Association, the Retailers Association, the Broadcasters Association, and the Chamber Committee (collectively the "South Dakota Plaintiffs") are all nonprofit corporations organized under the laws of South Dakota.

33.     The Chamber Committee continuously accepts financial contributions, including financial contributions from out-of-state persons and political committees, to finance political advocacy, including advocacy for or against South Dakota ballot question initiatives.

34.     Barnett is a Florida resident and AFP is a Virginia based nonprofit corporation organized in the District of Columbia (collectively the "Out-of-State Plaintiffs").   Barnett was actively

8

involved in South Dakota ballot measures before he moved to Florida and AFP routinely promotes its political beliefs across the United States by making financial contributions to political and ballot measure committees organized under the laws of and located in various states.

35.     The Out-of-State Plaintiffs wish to make financial contributions to the South Dakota Plaintiffs to further their political interests on South Dakota ballot questions.

36.     The South Dakota Plaintiffs want to receive financial contributions from the Out-of-State Plaintiffs and other out-of-state persons and organizations to fund their political activities regarding South Dakota ballot questions.

37.     Plaintiffs' desired actions will trigger the contribution prohibitions and enforcement mechanisms of the Ban.

38.     Similarly, the Broadcasters and Newspapers Associations, as part of the journalistic function of their members, wish to see the broadest dissemination of political speech concerning matters of public policy, including South Dakota ballot measures. They also wish to publish advertisements by ballot measure committees paid, in part, with funds solicited or accepted from out-of-state entities, including the Out-of-State Plaintiffs.

39.     The Ban was enacted pursuant to the passage of Initiated Measure 24 in the 2018 general election.[2]

40.     Section 1 of Initiated Measure 24 was codified as part of South Dakota's campaign finance laws at S.D.C.L. § 12-27-18.2.

41.     In the 2018 general election alone, five ballot questions were presented to South Dakota voters. Plaintiffs reasonably anticipate future elections will also have ballot questions. The Out-of-State Plaintiffs intend to contribute financially to statewide ballot question committees,

---

[2] Available at: http://sdsos.gov/elections-voting/assets/2018_IM_Petition_ProhibitBQContributions.pdf.

including to those of the South Dakota Plaintiffs, now and in the future to promote their political beliefs regarding South Dakota ballot measures.

42.     The South Dakota Plaintiffs intend to continue to solicit and receive financial contributions from out-of-state parties, including the Out-of-State Plaintiffs, to pursue their political interests in statewide ballot questions in current and future South Dakota ballot measures.

## The Statutory Provisions at Issue

43.     The Ban states: "Any contribution to a statewide ballot question committee by a person who is not a resident of the state at the time of the contribution, a political committee that is organized outside South Dakota, or an entity that is not filed as an entity with the secretary of state for the four years preceding such contribution is prohibited. If a statewide ballot question committee accepts a contribution prohibited by this section, the secretary of state shall impose a civil penalty equal to two hundred percent of the prohibited contribution after notice and opportunity to be heard pursuant to chapter 1-26. Any civil penalty collected pursuant to this section shall be deposited into the state general fund." S.D.C.L. § 12-27-18.2

44.     A "ballot question" is "any referendum, initiative, proposed constitutional amendment, or other measure submitted to voters at any election." S.D.C.L. § 12-27-1(1).

45.     "Ballot question committee" is defined as "a person or entity that raises, collects, or disburses contributions: (a) as a proponent for the placement of one or more ballot questions on the ballot; (b) as an opponent to the placement of any ballot question on the ballot; or (c) for the adoption or defeat of one or more ballot questions. A ballot question committee is not a person or political committee that makes a contribution to a ballot question committee. A ballot question committee is not an entity that makes a contribution to a ballot question committee from treasury funds." S.D.C.L. § 12-27-1(2).

46.     "Contribution," in relevant part, is defined as a payment "made for the purpose of influencing … the adoption or defeat of any ballot question submitted." S.D.C.L. § 12-27-1(6)(b).

47.     "Person" is defined as "a natural person." S.D.C.L. § 12-27-1(16).

48.     "Political committee" is defined as "any candidate campaign committee, political action committee, political party, or ballot question committee." S.D.C.L. § 12-27-1(18).

## CAUSES OF ACTION

### Count One:
### Violation of U.S. Constitution Amendments I and XIV

49.     Plaintiffs reallege and incorporate by reference the above allegations.

50.     The Out-of-State Plaintiffs want to engage in debate on public issues in South Dakota by contributing to the South Dakota Plaintiffs. The South Dakota Plaintiffs want to engage in debate on public issues by receiving contributions from the Out-of-State Plaintiffs and other out-of-state persons to fund their advocacy efforts, but the Ban prohibits them from exercising their free speech rights and bans their political association rights.

51.     "[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment, which was designed to secure the widest possible dissemination of information from diverse and antagonistic sources, and to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976) (*per curiam*) (internal citations and quotation marks omitted).

52.     Indeed, when it comes to discussion of policy, "debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

53.     These First Amendment interests apply to the states through the Fourteenth Amendment. *Gitlow v. N.Y.,* 268 U.S. 652, 666 (1925); *De Jonge v. Or.*, 299 U.S. 353, 364 (1937); *NAACP v. Ala.*, 357 U.S. 449, 466 (1958).

54.     "The First Amendment is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, . . . in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 203 (2014) (Roberts, C.J., controlling op.) (internal quotation marks and citations omitted).

55.     "As relevant here, the First Amendment safeguards an individual's right to participate in the public debate through political expression and political association. When an individual contributes money to a [ballot question committee], he exercises both of those rights: The contribution serves as a general expression of support for the [committee] and [its] views and serves to affiliate a person with [the committee]." *Id.* (internal quotation marks and citations omitted).

56.     These First Amendment rights to engage in political activity are "important" whether a person modestly engages in the political process or has a more sophisticated role and spends large sums of money. *Id.* "Either way, [that person] is participating in an electoral debate that [the Supreme Court has] recognized is integral to the operation of the system of government established by our Constitution." *Id.* at 203-204 (internal quotation marks and citations omitted).

### Strict Scrutiny Review

57.     The Ban prohibits Plaintiffs from engaging in political activity by banning their free speech and associational rights. *Id.* at 203.

58.     The Ban prohibits the Out-of-State Plaintiffs from expressing their out-of-state viewpoint on ballot questions through a prohibition on contributions to the South Dakota Plaintiffs and civil penalties on the South Dakota Plaintiffs if they accept those contributions. *See* S.D.C.L. § 12-27-18.2.

59.     The Ban establishes a governmental preference for in-state speech as opposed to out-of-state speech. "By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340-41 (2010).

60.     Indeed, the Ban's viewpoint discrimination is an "egregious" and "more blatant" form of content discrimination and subject to strict scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230-31 (2015) (internal quotation marks and citations omitted).

61.     Therefore, the government must demonstrate the Ban is narrowly tailored to meet a compelling government interest. *See 281 Care Comm. v. Arneson*, 766 F.3d 774, 784-85 (8th Cir. 2014) (a ban on political speech is subject to strict scrutiny).

62.     Likewise, the burden the Ban places on Plaintiffs' associational rights is subject to strict scrutiny.

63.     The First Amendment protects the right of individuals to associate "for the advancement of common political goals and ideas." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 357 (1997).

64.     "Contributions by individuals to support concerted action by a committee advocating a position on a ballot measure is beyond question a very significant form of political expression." *Citizens Against Rent Control v. Berkeley*, 454 U.S. 290, 298 (1981).

65.     Accordingly, contribution bans can be "an impermissible restraint on freedom of association." *Id.*

66.     "When deciding whether a state election law violates First and Fourteenth Amendment associational rights, [a court must] weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Timmons*, 520 U.S. at 358 (internal quotation marks and citations omitted).

67.     "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest [*i.e.*, strict scrutiny]. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Green Party v. Martin*, 649 F.3d 675, 680 (8th Cir. 2011) (quoting *Timmons*, 520 U.S. at 358).

68.     Thus, the level of scrutiny applied depends on how severe the burden is on Plaintiffs' associational rights. *Id.*

69.     Here, the Ban imposes a severe burden on Plaintiffs' associational rights by prohibiting them from associating with one another through financial contributions and discriminates against their associational rights because Barnett is not a South Dakota resident and AFP is not organized under the laws of South Dakota.

70.     Because the Ban imposes a severe burden on Plaintiffs' associational freedoms and in a discriminatory fashion, the state must show the Ban is narrowly tailored to advance a compelling state interest. *Id.* Therefore, strict scrutiny applies. *Id.*

71.     The Ban's restrictions on Plaintiffs' collective free speech and associational rights fail strict scrutiny.

72.     South Dakota has no compelling governmental interest to limit Plaintiffs' political free speech and associational rights or discriminate against them in favor of the associational freedoms of South Dakota residents and political committees, and a ban on these political activities, by its very nature, is not narrowly tailored.

73.     Accordingly, the Ban thoroughly fails strict scrutiny.

74.     Therefore, the Ban is unconstitutional under the First and Fourteenth Amendments.

**Closely Drawn Scrutiny Review**

75.     The Ban eliminates the Out-of-State Plaintiffs' ability to make political contributions to the South Dakota Plaintiffs by limiting its contributions to zero dollars.

76.     Under the Ban, the Out-of-State Plaintiffs' contributions to the South Dakota Plaintiffs are prohibited and the law imposes civil penalties on the South Dakota Plaintiffs if the contribution limit is violated. *See* S.D.C.L. § 12-27-18.2.

77.     Financial contributions to support a ballot measure committee is a substantial form of political speech. *See Citizens Against Rent Control*, 454 U.S. at 298.

78.     "Given the important role of contributions in financing political campaigns, contribution restrictions could have a severe impact on political dialogue if the limitations prevented candidates and political committees from amassing the resources necessary for effective advocacy." *Buckley*, 424 U.S. at 21.

79.     Indeed, contribution limits "automatically affect[] expenditures, and limits on expenditures operate as a direct restraint on freedom of expression of a group or committee desiring to engage in political dialogue concerning a ballot measure." *Citizens Against Rent Control*, 454 U.S. at 299.

80.     The Ban should be subjected to strict scrutiny.   But even if it is viewed merely as a contribution limit, the Ban fails constitutional scrutiny.

81.     Because a contribution limit generally allows a "symbolic expression of support" without "infring[ing] the contributor's freedom to discuss candidates and issues," it must pass closely drawn scrutiny. *McCutcheon*, 572 U.S. at 197; *Buckley*, 424 U.S. at 21. *See also Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759, 763 (8th Cir. 2018) (referring to closely drawn scrutiny as "exacting scrutiny").

82.     Under closely drawn scrutiny, the state must show that the law serves a "sufficiently important interest" and employs means "closely drawn to avoid unnecessary abridgement of associational freedoms." *McCutcheon*, 572 U.S. at 197; *Buckley*, 424 U.S. at 25. *See also Free & Fair Election Fund*, 903 F.3d at 763.

83.     "A restriction on First Amendment freedoms is unconstitutional on its face if no set of circumstances exists under which the restriction would be valid." *Free & Fair Election Fund*, 903 F.3d at 763 (internal quotation marks, brackets, and citations omitted).

84.     "There is only one legitimate state interest in restricting campaign finances: 'preventing corruption or the appearance of corruption.'" *Id.* (quoting *McCutcheon*).

85.     "This interest is limited to preventing 'only a specific type of corruption—'*quid pro quo*' corruption" or its appearance. *Id.* (quoting *McCutcheon*).

86.     *Quid pro quo* corruption requires "the exchange of a thing of value for an 'official act.'" *McDonnell v. United States*, 579 U.S. _, _, 136 S. Ct. 2355, 2372 (2016).

87.    "A large donation that is not made 'in connection with an effort to control the exercise of an *officeholder's* official duties, does not give rise to . . . *quid pro quo* corruption. Similarly, the general risk that a donor, through large donations, will 'garner influence over or access to elected officials or political parties,' either in fact or in appearance, is insufficient to create *quid pro quo* corruption." *Free & Fair Election Fund*, 903 F.3d at 763 (quoting *McCutcheon*) (emphasis added).

88.    "Instead, 'the risk of *quid pro quo* corruption is generally applicable only to the narrow category of money gifts that are directed, in some manner, to a *candidate or officeholder.*'" *Id.* at 764 (quoting *McCutcheon*) (emphasis added).

89.    In this case, it is impossible for the Ban to survive closely drawn scrutiny.

90.    The Ban applies to non-residents and non-South Dakota political committee contributions to South Dakota ballot question committees—not a political candidate or officeholder. *See* S.D.C.L. § 12-27-18.2.

91.    The Out-of-State Plaintiffs' contributions to the South Dakota Plaintiffs have no risk of giving them control over an officeholder's official duties and, therefore, do not give rise to *quid pro quo* corruption. *Free & Fair Election Fund*, 903 F.3d at 763.

92.    There is also no risk that the Out-of-State Plaintiffs' contributions to the South Dakota Plaintiffs will help them garner influence over or access to elected officials or political parties either in fact or in appearance. *Id.*

93.    Fundamentally, "there is no significant state or public interest in curtailing debate and discussion of a ballot measure." *Citizens Against Rent Control*, 454 U.S. at 299.

94.    A donor cannot exchange a contribution for a *quid pro quo* favor from a ballot measure or even gain influence with a statute by contributing to its enactment.

95.     "The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue." *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 790 (1978) (citations omitted).

96.     "[T]he concern of a political *quid pro quo* for large contributions, which becomes a possibility when the contribution is to an individual candidate, is not present when the contribution is given to a political committee or fund that by itself does not have legislative power." *Day v. Holahan*, 34 F.3d 1356, 1365 (8th Cir. 1994).

97.     The Ban does not regulate *quid pro quo* corruption.

98.     Regulating *quid pro quo* corruption is the only "legitimate state interest in restricting campaign finances." *Free & Fair Election Fund*, 903 F.3d at 763.

99.     Because the Ban restricts contributions to ballot question committees and not candidates or office holders to prevent *quid pro quo* corruption, there are no set of circumstances that the law can be valid. *Id.* Consequently, tailoring analysis is unnecessary. *Id.*

100.    Therefore, the Ban is facially unconstitutional under the First and Fourteenth Amendments. *Id.*

## Count Two:
## Violation of U.S. Constitution Article I, Section VIII, Clause III (Commerce Clause).

101.    Plaintiffs reallege and incorporate by reference the above allegations.

102.    The Ban fails under the Commerce Clause.

103.    Plaintiffs wish to engage in interstate commerce by making and receiving financial contributions across state lines.

104.    The Ban discriminates against Plaintiffs by prohibiting them from engaging in this form of interstate commerce because the contribution is not from a South Dakota resident or political committee.

105.    Congress has the sole power to regulate interstate commerce. *See* U.S. Const. art. I, § 8, cl. 3; *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2091 (2018); *Or. Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994).

106.    Consequently, the Commerce Clause forbids the states from "discriminat[ing] against or burden[ing] the interstate flow of articles of commerce." *Or. Waste Sys.*, 511 U.S. at 98.

107.    "This 'negative' aspect of the Commerce Clause is often referred to as the 'Dormant Commerce Clause' and is invoked to invalidate overreaching provisions of state regulation of commerce." *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003).

108.    Here, the Ban unjustifiably discriminates against or burdens the interstate flow of articles of commerce, *i.e.* financial contributions, from out-of-state individuals and political committees to South Dakota ballot question committees.

109.    The Supreme Court has held that transferring money across state lines is interstate commerce. *United States v. Shubert*, 348 U.S. 222, 226 (1955) (interstate commerce is the "continuous and indivisible stream of intercourse among the states involving the transmission of large sums of money. . . ." (internal quotation marks and citation omitted)); *see also United States v. Bailey*, 115 F.3d 1222, 1230 (5th Cir. 1997) (noting that nothing could be more commercial than "the transfer of money from one hand to another.").

110.    The Eighth Circuit Court of Appeals held that contributions to non-federal political committees is commerce and can be regulated by Congress under the Commerce Clause. *See Egan v. United States*, 137 F.2d 369, 372-75 (8th Cir. 1943) ("The proposition that political contributions are not commerce and are not subject to regulation by Congress is not a valid objection to the Act.").

111.     Therefore, because the Ban regulates interstate commerce, it is subject to scrutiny under the Commerce Clause to determine whether the law has only incidental effects on interstate commerce or discriminates against interstate commerce. *See Or. Waste Sys.*, 511 U.S. at 99.

112.     "'[D]iscrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.*

113.     "State laws that discriminate against interstate commerce face 'a virtually *per se* rule of invalidity.'" *Wayfair*, 138 S. Ct. at 2091 (quoting *Granholm v. Heald*, 544 U.S. 460, 476 (2005)). *See also Jones v. Gale*, 470 F.3d 1261, 1270 (8th Cir. 2006) ("[I]f a state constitutional provision is indeed discriminatory, it is *per se* invalid unless the State can demonstrate, under rigorous scrutiny, that [it has] no other means to advance a legitimate local interest.") (internal quotation marks, brackets, and citations omitted).

114.     Indeed, "when a state statute directly regulates or discriminates against interstate commerce, . . . , [the Supreme Court has] generally struck down the statute without further inquiry." *Granholm*, 544 U.S. at 487 (internal quotation marks and citations omitted).

115.     If a law is discriminatory, the state must show it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." *Id.* at 489 (internal quotation marks and citations omitted). *See also Jones*, 470 F.3d at 1270.

116.     Accordingly, if a law is discriminatory and the state cannot meet its burden, then the law is unconstitutional and no further analysis is required. *See Jones v. Gale*, 405 F. Supp. 2d 1066, 1078 (D. Neb. 2005).

117.     "A law overtly discriminates against interstate commerce if it is discriminatory on its face, if it has a discriminatory purpose, or if it has a discriminatory effect." *Jones*, 470 F.3d at 1267 (internal quotation marks and citations omitted).

118.    Whether a law is discriminatory can be proven if there is direct evidence "that the drafters of [the Ban] or the South Dakota populace that voted for [the Ban] intended to discriminate against out-of-state [contributions]." *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 592-93 (8th Cir. 2003).

119.    There is direct evidence that the Ban is discriminatory.  Indeed, the text of the law demonstrates discrimination against out-of-state persons and political committees that wish to contribute to a South Dakota ballot question committee.  Consequently, because the text of the Ban demonstrates its discriminatory nature, there is direct evidence that the South Dakota populace intended to discriminate against out-of-state individuals and political committees when they approved the Ban through Initiated Measure 24.  *See id.*

120.    Clearly, the text of the Ban shows the law is discriminatory on its face, has a discriminatory purpose, and has a discriminatory effect.  *See Jones*, 470 F.3d at 1267.

121.    There is no legitimate local purpose that can served by reasonable nondiscriminatory alternatives, *Granholm*, 544 U.S. at 489, because the whole purpose of the law is to prevent out-of-state individuals and political committees from contributing to South Dakota ballot question committees.

122.    Because there is no legitimate local purpose, the Ban also fails Commerce Clause analysis under the balancing test in *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), since there is no local interest to balance against the Plaintiffs' speech and association interests.

123.    Therefore, the Ban is unconstitutional under the Commerce Clause.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against South Dakota Secretary of State Steve Barnett and South Dakota Attorney General Jason Ravnsborg, Defendants, as follows:

A.      A declaration that S.D.C.L. § 12-27-18.2 is unconstitutional under the First and Fourteenth Amendments of the United States Constitution.

B.      A declaration that S.D.C.L. § 12-27-18.2 is unconstitutional under the Commerce Clause of the United States Constitution.

C.      Such injunctive relief as this Court may direct to give effect to its declarations and judgments.

D.      Costs and attorneys' fees pursuant to 28 U.S.C. §§ 1983 and 1988, and any other applicable statute or authority.

E.      Any other relief this Court may grant in its discretion.

Dated: April 17, 2019                          Respectfully submitted,

                                               */s/ Marty J. Jackley*_____
                                               Marty J. Jackley
                                               David E. Lust
                                               Sara Frankenstein
                                               Gunderson, Palmer, Nelson, Ashmore LLP
                                               111 West Capitol Avenue, Suite 230
                                               Pierre, South Dakota 57501
                                               Telephone: (605) 494-0105
                                               Telefax: (605) 342-9503
                                               Email: mjackley@gpna.com

3:19-CV-3010

JS 44   (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SOUTH DAKOTA NEWSPAPER ASSOCIATION, et al. | STEVE BARNETT, in his official capacity as SD Secretary of State, JASON RAVNSBORG, in his official capacity as SD Attorney General |

**(b)** County of Residence of First Listed Plaintiff    Brookings
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Hughes
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Marty J. Jackley
111 West Capitol Ave., Ste. 230, Pierre, SD  57501

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❑ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❑ 2  U.S. Government Defendant
- ❑ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated *or* Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated *and* Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❑ 110 Insurance<br>❑ 120 Marine<br>❑ 130 Miller Act<br>❑ 140 Negotiable Instrument<br>❑ 150 Recovery of Overpayment & Enforcement of Judgment<br>❑ 151 Medicare Act<br>❑ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❑ 153 Recovery of Overpayment of Veteran's Benefits<br>❑ 160 Stockholders' Suits<br>❑ 190 Other Contract<br>❑ 195 Contract Product Liability<br>❑ 196 Franchise | **PERSONAL INJURY**<br>❑ 310 Airplane<br>❑ 315 Airplane Product Liability<br>❑ 320 Assault, Libel & Slander<br>❑ 330 Federal Employers' Liability<br>❑ 340 Marine<br>❑ 345 Marine Product Liability<br>❑ 350 Motor Vehicle<br>❑ 355 Motor Vehicle Product Liability<br>❑ 360 Other Personal Injury<br>❑ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❑ 365 Personal Injury - Product Liability<br>❑ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❑ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❑ 370 Other Fraud<br>❑ 371 Truth in Lending<br>❑ 380 Other Personal Property Damage<br>❑ 385 Property Damage Product Liability | ❑ 625 Drug Related Seizure of Property 21 USC 881<br>❑ 690 Other | ❑ 422 Appeal 28 USC 158<br>❑ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>❑ 820 Copyrights<br>❑ 830 Patent<br>❑ 835 Patent - Abbreviated New Drug Application<br>❑ 840 Trademark | ❑ 375 False Claims Act<br>❑ 376 Qui Tam (31 USC 3729(a))<br>❑ 400 State Reapportionment<br>❑ 410 Antitrust<br>❑ 430 Banks and Banking<br>❑ 450 Commerce<br>❑ 460 Deportation<br>❑ 470 Racketeer Influenced and Corrupt Organizations<br>❑ 480 Consumer Credit<br>❑ 485 Telephone Consumer Protection Act<br>❑ 490 Cable/Sat TV<br>❑ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** |
| ❑ 210 Land Condemnation<br>❑ 220 Foreclosure<br>❑ 230 Rent Lease & Ejectment<br>❑ 240 Torts to Land<br>❑ 245 Tort Product Liability<br>❑ 290 All Other Real Property | ❑ 440 Other Civil Rights<br>❑ 441 Voting<br>❑ 442 Employment<br>❑ 443 Housing/ Accommodations<br>❑ 445 Amer. w/Disabilities - Employment<br>❑ 446 Amer. w/Disabilities - Other<br>❑ 448 Education | **Habeas Corpus:**<br>❑ 463 Alien Detainee<br>❑ 510 Motions to Vacate Sentence<br>❑ 530 General<br>❑ 535 Death Penalty<br>**Other:**<br>❑ 540 Mandamus & Other<br>❑ 550 Civil Rights<br>❑ 555 Prison Condition<br>❑ 560 Civil Detainee - Conditions of Confinement | ❑ 710 Fair Labor Standards Act<br>❑ 720 Labor/Management Relations<br>❑ 740 Railway Labor Act<br>❑ 751 Family and Medical Leave Act<br>❑ 790 Other Labor Litigation<br>❑ 791 Employee Retirement Income Security Act | ❑ 861 HIA (1395ff)<br>❑ 862 Black Lung (923)<br>❑ 863 DIWC/DIWW (405(g))<br>❑ 864 SSID Title XVI<br>❑ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>❑ 870 Taxes (U.S. Plaintiff or Defendant)<br>❑ 871 IRS—Third Party 26 USC 7609 |
|  |  | **IMMIGRATION**<br>❑ 462 Naturalization Application<br>❑ 465 Other Immigration Actions |  | ❑ 890 Other Statutory Actions<br>❑ 891 Agricultural Acts<br>❑ 893 Environmental Matters<br>❑ 895 Freedom of Information Act<br>❑ 896 Arbitration<br>❑ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☒ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ❑ 2  Removed from State Court
- ❑ 3  Remanded from Appellate Court
- ❑ 4  Reinstated or Reopened
- ❑ 5  Transferred from Another District *(specify)*
- ❑ 6  Multidistrict Litigation - Transfer
- ❑ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 1331; 42 USC §§ 1983, 1988; 28 USC § 1343(a)

Brief description of cause:
Challenging SDCL 12-27-18.2 as violating the First & Fourteenth Amendment and Commerce Clause

## VII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ❑ Yes   ❑ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE    Honorable Charles Kornmann

DOCKET NUMBER   Civ No. 19-1003

DATE  4/17/19

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE